IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2025

## BRANDON HOLLIDAY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-24-297          Joseph T. Howell, Judge**
_____

### No. W2025-00548-CCA-R3-PC
_____

The petitioner, Brandon Holliday, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and STEVEN W. SWORD, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Brandon Holliday.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On direct appeal, this Court summarized the facts surrounding the petitioner's convictions for evading arrest in a vehicle with risk of death or injury to innocent bystanders, disobeying a traffic signal, violating financial responsibility law, reckless driving, violation of duty upon striking a fixture upon a highway, and driving with a revoked license, as follows:

> Around 3 a.m. on January 9, 2021, officers with the Jackson Police Department (JPD) observed the [petitioner] drive into a nightclub parking

lot, ran his vehicle registration, and determined that his license had been revoked. Shortly thereafter, officers observed the [petitioner] drive out of the parking lot and run a stop sign. Upon signaling the [petitioner] to stop by activating their blue lights, the [petitioner] engaged in a highspeed chase that ended when he crashed into a utility pole in the parking lot of a twenty-four-hour laundromat. The [petitioner] fled on foot but was caught and arrested. On January 3, 2022, the [petitioner] was indicted by a Madison County grand jury for the above charges. He was also indicted for one count of failure to yield to a stop sign, which the State dismissed via nolle prosequi during trial.

At the [petitioner's] one-day trial on May 2, 2023, JPD Officer Robert Dakota Jaggers testified that between 12 a.m. and 1 a.m. on January 9, 2021, he was patrolling several local nightclubs when he observed the [petitioner] drive his vehicle, a black Chevy Monte Carlo, into the parking lot of Cody's, a local nightclub. Officer Jaggers recognized the [petitioner] and ran the registration for the [petitioner's] vehicle. A copy of the [petitioner's] driver's license history was entered into evidence. The vehicle was registered to the [petitioner], and Officer Jaggers ran a second search on his name and driver's license number. The second search showed that the [petitioner's] license was revoked. Officer Jaggers noted that the picture on the driver's license matched the [petitioner's] appearance.

The [petitioner] entered Cody's before Officer Jaggers concluded his search, and he decided not to follow the [petitioner] into the club. Officer Jaggers called his partner Officer Andrew Washburn, informed him of the situation, and planned to conduct a traffic stop after the [petitioner] left the nightclub. After the nightclub closed, Officer Jaggers and Officer Washburn pulled their cars into a parking lot atop a hill, which enabled them to observe the [petitioner] leave the club, re-enter his vehicle, and drive away.

Officer Jaggers drove into the "cove" and began to follow the [petitioner], and Officer Washburn took a different route. Officer Jaggers followed the [petitioner] away from traffic in search of a good location to conduct a traffic stop. Officer Jaggers observed the [petitioner] "slow roll[]" through a stop sign. The [petitioner] pulled onto the road, but Officer Jaggers did not initiate the traffic stop because he was waiting on Officer Washburn to return. Officer Washburn returned while Officer Jaggers was waiting at a red light, and when the light turned green, Officer Jaggers initiated his blue lights from behind the [petitioner]. Dash camera footage from Officer Jaggers' patrol vehicle was entered into evidence and played for the jury.

The dash camera footage shows Officer Jaggers following the [petitioner] in his patrol vehicle. The [petitioner] stopped at a stop sign, signaled with his blinker, and turned right. Officer Jaggers followed the [petitioner] onto the road and turned on his blue lights, signaling the [petitioner] to stop. The [petitioner] continued to drive in the passing lane and accelerated. Officer Jaggers pursued him, and at one point, the [petitioner] swerved into the oncoming lane. During the chase, the [petitioner] passed several cars and ran a red light. The [petitioner] then rounded a corner, and when Officer Jaggers approached, the [petitioner] crashed into a utility pole in the parking lot of a twenty-four-hour laundromat. The [petitioner] opened the driver's side door of his car and fled from the officers on foot.

Officer Jaggers testified that he had to accelerate to speeds "[i]n excess of 110 miles an hour" to keep up with the [petitioner] during the chase and that the [petitioner] ran a red light. Officer Jaggers testified that the pursuit placed him and another vehicle at risk of danger or injury. Officer Jaggers explained that as he approached the [petitioner's] wrecked car, the utility pole had fallen across the road, and the road was closed "at least an hour" to remove it. Officer Jaggers pursued the [petitioner] on foot after the crash and shouted at him to stop and get on the ground. He estimated that he and Officer Washburn ran approximately 100 yards before they caught the [petitioner]. The [petitioner] stopped running as the officers reached him and did not resist when they apprehended him. The [petitioner] told the officers that he was on parole and "this [was] going to send him back."

On cross-examination, Officer Jaggers explained he did not recall if there was another name on the vehicle's registration. He agreed that the dash camera footage showed no traffic violation being committed prior to him turning on his lights. Officer Jaggers acknowledged that one of the cars the [petitioner] passed was in the right lane and that the [petitioner] was not near it while in the passing lane. He stated the second car the [petitioner] passed during the chase looked as if it had pulled over into the right lane because of the approaching police lights.

Officer Washburn, now a sergeant for the Jackson Police Department, testified consistently with the testimony of Officer Jaggers. He stated that on the night of the offense Officer Jaggers informed him that he saw a driver exiting a black Monte Carlo that smelled of marijuana. They met and ran the vehicle registration information and the name of the owner. Officer Jaggers

- 3 -

informed Officer Washburn that [petitioner] was the driver and his license was revoked. The two officers conducted other service calls, and around 3 a.m., Officer Jaggers informed Officer Washburn that he saw the [petitioner] driving from the nightclub in the black Monte Carlo. Officer Jaggers followed the [petitioner] while Officer Washburn drove in a different direction in the event the [petitioner] drove a different route. When Officer Washburn eventually caught up with Officer Jaggers and the [petitioner], Officer Jaggers attempted to initiate the traffic stop.

Officer Washburn stated he knew there would be a pursuit when he saw the [petitioner's] vehicle accelerate, and he activated his police lights. Officer Washburn's dash camera footage from the pursuit was played for the jury and entered into evidence. Officer Washburn testified that his speed was "well over 100" during the chase. Officer Washburn pursued the [petitioner] on foot after the [petitioner] crashed into the utility pole and fled, and his body camera footage was played for the jury and admitted into evidence.

The body camera footage depicts the [petitioner] handcuffed on the ground as Officer Jaggers and Officer Washburn stand over him. After approximately thirty seconds of footage, Officer Washburn reaches towards his vest and turns on the sound. The [petitioner] says, "It's over with, it's over with, man." Officer Washburn tells him, "You know what you most likely would have gotten? A citation." The [petitioner] asks, "What did I do?" Officer Washburn tells him, "Your license is revoked." He searched the [petitioner] and told him, "You ain't outrunning [Officer Jaggers]." The [petitioner] asks for a cigarette and is provided one. Officer Washburn asks, "Your name Brandon? Brandon Holliday?" The [petitioner] affirms, "Yeah." Officer Washburn continues, "You on parole, ain't you?" The [petitioner] replies, "No, I just got off." Officer Washburn asks when the [petitioner] got off of parole, and the [petitioner] replies that his "sentence expired." The [petitioner] asks what he was being charged with, and Officer Washburn tells him, "Well, you just caught a felony for evading arrest by a vehicle." Officer Jaggers adds, "And a hit and run," and the [petitioner] replies, "I didn't hit nobody." Officer Washburn tells him, "Leaving the scene of an accident, you hit that pole, man." The [petitioner] is walked to Officer Jaggers' patrol vehicle and placed inside. The video continues with Officer Washburn searching the [petitioner's] car and observing the wreckage.

Officer Washburn testified that they had chased the [petitioner] on foot "maybe [thirty] or [forty] yards or so." Officer Washburn clarified on

- 4 -

cross-examination that the stop was not made because of the odor of marijuana emanating from the [petitioner] nor was the odor mentioned in Officer Jaggers' report. He also confirmed that the [petitioner] made a proper turn at the only stop sign present in the footage.

The State concluded its proof, and defense counsel made a motion for judgment of acquittal for the counts of failure to yield to a stop sign, reckless driving, and violation of duty upon striking a fixture upon a highway. The trial court denied the motion, but the State agreed to dismiss the count for failure to yield to a stop sign. The defense put on no proof, and the jury found the [petitioner] guilty of the remaining charges. At his sentencing hearing, the trial court sentenced the [petitioner] as a Range III persistent offender to an effective sentence of twelve years' confinement, and the judgments reflect that the [petitioner's] reckless driving conviction was merged with his felony evading arrest conviction.

*State v. Holliday*, No. W2023-01097-CCA-R3-CD, 2024 WL 3412257, at *1-3 (Tenn. Crim. App. July 15, 2024), *no perm. app. filed.*

Following the denial of his direct appeal, the petitioner filed a timely pro se petition for post-conviction relief on October 23, 2024, arguing, in part, trial counsel was ineffective for failing to object to Officer Jaggers' testimony regarding his prior knowledge of the petitioner. On November 8, 2024, the post-conviction court entered an order appointing counsel to represent the petitioner. Additionally, the court ordered post-conviction counsel to

review the Petition, consult with [the p]etitioner, and investigate all possible constitutional grounds for relief for the purpose of filing an Amended Petition, if necessary. The Amended Petition shall be filed within thirty (30) days of the date of this Order. In the event no Amended Petition will be filed, counsel shall file a Notice stating that no Amended Petition will be filed.

Despite the post-conviction court's order, neither an amended petition nor a "[n]otice stating that no [a]mended [p]etition will be filed" was filed with the court. Regardless, an evidentiary hearing was held on March 17, 2025, during which trial counsel and the petitioner testified.

Trial counsel testified that he was appointed to represent the petitioner in circuit court. Following his appointment, trial counsel filed the standard discovery motions as well as a motion to suppress, which was denied. Because the petitioner lived in Missouri prior to trial, trial counsel met with the petitioner only once, during which time they

reviewed the dash and body cam footage. However, trial counsel testified that he frequently spoke to the petitioner on the phone to discuss the allegations against him.

Trial counsel testified that Officer Jaggers testified that he knew the petitioner from a prior encounter, even though the petitioner was not a resident of Jackson, Tennessee. Trial counsel recalled objecting to that testimony and thought he "[p]robably moved for a mistrial." Trial counsel testified that, although he explored that line of questioning during the suppression hearing, he was reluctant to do so in front of the jury. Trial counsel did not ask the officer how he knew the petitioner because he did not "want any [of the petitioner's] prior bad acts to come in at the trial and potentially prejudice the jury." Trial counsel believed he might "open up the door for the State to start asking questions about that prior act or acts" by questioning Officer Jaggers about his statement.

The petitioner testified that he "had some phone conversations" with trial counsel prior to trial but never saw the dash or body cam footage. Because he had not seen the videos before the trial, the petitioner did not feel fully prepared. Regarding the testimony of Officer Jaggers, the petitioner testified that he had not lived in Jackson since he was a child. The petitioner told trial counsel that Officer Jaggers was lying; however, the petitioner did not ask trial counsel to question Officer Jaggers about the statement.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the petitioner argues trial counsel was ineffective for failing to review the dash and body cam footage with him and for failing to question Officer Jaggers about his statement that he recognized the petitioner. The State contends the post-conviction court properly denied relief. We agree with the State.

Before addressing the merits of the petitioner's claims, we find it necessary to address the petitioner's failure to comply with Tennessee Code Annotated section 40-30-107(b) which mandates that upon the entry of a preliminary order by the post-conviction court finding the petitioner has stated a colorable claim, counsel or the petitioner if proceeding pro se "must file an amended petition or a written notice that no amendment will be filed." As noted *supra* in reciting the procedural history of the instant matter, the petitioner failed to file an amended petition or a written notice informing the State and post-conviction court of his intent not to file an amended petition. While we do not believe it is appropriate to resolve that issue today due to the fact that it was not raised by either party or the post-conviction court during the hearing as well as the fact that the merits of the petitioner's claim do not entitle him to relief as discussed *infra*, we would note that the

mandatory language could easily be read to allow for dismissal of the petition altogether. Moreover, Tennessee Supreme Court Rule 28, section 6(c)(5) provides that "appointed counsel who fails to comply with this section may be denied compensation for services rendered."[1]  Therefore, in order to avoid dismissal of the petition and being denied compensation, the better practice for both post-conviction courts and counsel would be to ensure the mandatory language of the statute has been complied with prior to conducting a hearing.  Unfortunately, that did not occur in the instant matter.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f).  The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them.  *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues.  *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997).  However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness.  *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998).  The issue of ineffective assistance of counsel presents mixed questions of fact and law.  *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact.  *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee).  The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

[1] Tennessee Supreme Court Rule 28, section 6(c)(2) mirrors the language of Tennessee Code Annotated section 40-30-107(b) requiring appointed counsel to "file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed."

466 U.S. at 687.  In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied.  *Id.*  Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## I.    Failure to Provide Dash and Body Cam Footage

The petitioner argues trial counsel was ineffective for failing to show him the dash and body cam footage prior to trial.  Specifically, the petitioner argues he was not "fully prepared to go to trial" because he had not seen the footage.  The State contends trial counsel was not ineffective for failing to review the dash and body cam footage with the petitioner.

Initially, we note that, in his petition the petitioner phrased his claim as prosecutorial misconduct by failing to provide the dash and body cam footage to the defense; however, during the evidentiary hearing, the petitioner claimed trial counsel's failure to review the dash and body cam footage with the petitioner constituted ineffective assistance.  Ordinarily, issues not raised in the post-conviction petition cannot be raised for the first time on appeal.  *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived.").  However, at the evidentiary hearing, the petitioner and trial counsel were questioned regarding the footage, and the post-conviction court made a ruling on the issue.  Per *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020), "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection."  *See Starner v. State*, No. M2018-01015-CCA-R3-PC, 2019 WL 3856852, at *13 (Tenn. Crim. App. Aug. 16,

2019) (holding that an issue was "reviewable on the merits" because the petitioner argued it during the post-conviction hearing with no objections); *Williams v. State*, No. W2018-01269-CCA-R3-PC, 2019 WL 2407157, at *11 (Tenn. Crim. App. June 7, 2019) (interpreting Tennessee Supreme Court Rule 28, section 8(D)(5) to hold that an issue may not be waived if it was "raised at the post-conviction hearing and ruled on by the post-conviction court" without objection because the petitioner would not have been aware of the need to amend the petition to include the issue), *perm. app. denied*, (Tenn. Oct. 11, 2019); *Matthews v. State*, No. W2018-00966-CCA-R3-PC, 2019 WL 1110101, at *9 (Tenn. Crim. App. Mar. 11, 2019) (considering an issue on the merits that was not specifically mentioned in the post-conviction petition, though alleged generally, because it was litigated at the post-conviction hearing without objection); *Brown v. State*, No. W2017-01755-CCA-R3-PC, 2019 WL 931735, at * 10 (Tenn. Crim. App. Feb. 22, 2019) (considering an issue not included in petition but argued at the post-conviction hearing without objection); *Yarboro v. State*, No. W2017-00125-CCA-R3-PC, 2018 WL 4441364, at *7 (Tenn. Crim. App. Sept. 17, 2018) (deciding an issue not presented in the petition because it was argued at the post-conviction hearing and not objected to by opposing counsel and petitioner was no longer able amend the petition); *Herron*, 1992 WL 43273, at *4 ("On the other hand, if an issue is not specially pled, we do not view [our case law] as prohibiting a trial court from ruling on it if it is litigated by the parties in a post-conviction hearing without objection."). Therefore, we will review the petitioner's claim on the merits.

At the evidentiary hearing, trial counsel testified that, because the petitioner lived in Missouri prior to trial, they mostly spoke on the phone. However, the petitioner came to trial counsel's office in Jackson to review the dash and body cam footage. The petitioner testified that he had "some phone conversations" with trial counsel but denied ever viewing the dash and body cam footage before the trial.

The post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against the findings of the post-conviction court. *See Tidwell*, 922 S.W.2d at 500. Additionally, the petitioner has failed to prove by clear and convincing evidence his factual claim that he was not shown the dash and body cam footage prior to trial. Moreover, even if trial counsel failed to show the petitioner the videos, the petitioner failed to establish how reviewing the videos prior to trial would have affected the outcome. The petitioner is not entitled to relief on this issue.

## II.    Failure to Question Officer Jaggers Regarding Statement About the Petitioner

The petitioner argues trial counsel was ineffective for failing to question Officer Jaggers about his statement that he recognized the petitioner even though the petitioner did not live in Jackson at the time of his arrest. The petitioner argues trial counsel could have

"cast doubt upon [Officer Jaggers'] testimony at trial." The State contends trial counsel was not ineffective for failing to question Officer Jaggers about his statement.

At the evidentiary hearing, trial counsel recalled objecting to Officer Jaggers' statement about the petitioner and thought he "probably moved for a mistrial." He did not ask Officer Jaggers any follow-up questions about how he knew the petitioner because trial counsel did not want "any [of the petitioner's] prior bad acts to come in at the trial and potentially prejudice the jury." Trial counsel was afraid that any questions about Officer Jaggers' knowledge of the petitioner would "open up the door for the State to start asking questions about that prior act or acts." However, trial counsel asked Officer Jaggers about the statement during the suppression hearing. The petitioner testified he told trial counsel that Officer Jaggers was lying about knowing the petitioner but did not ask trial counsel to ask the officer any follow-up questions.

As noted above, trial counsel's testimony indicates he made a strategic and informed decision not to ask Officer Jaggers about his statement that he knew the petitioner. Trial counsel did not want to open the door for any of the petitioner's prior convictions or bad acts to be introduced at trial and prejudice the jury. The fact that a strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id.* Furthermore, the post-conviction court accredited the testimony of trial counsel, and nothing in the record preponderates against the findings of the post-conviction court. *See Tidwell*, 922 S.W.2d at 500. The petitioner is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE